In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1199

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MIGUEL A. MORALES-GARCIA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-00057-1 — **Matthew F. Kennelly**, *Judge.*

ARGUED MAY 20, 2026 — DECIDED AUGUST 5, 2026

Before BRENNAN, *Chief Judge*, and SCUDDER and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Miguel Angel Morales-Garcia negotiated the sale of five kilograms of cocaine with an undercover agent. After his arrest en route to the sale, Morales-Garcia confessed. At the trial that followed, Morales-Garcia argued only that the weight of the drugs he possessed was less than five kilograms, the threshold for a mandatory-minimum sentence. A jury rejected his position and convicted

him on all counts. On appeal, Morales-Garcia challenges the
district court's decisions to admit evidence related to a prior
heroin sale under Federal Rule of Evidence 404(b)(2) and to
overrule his objection to the prosecutor's rebuttal argument.
Morales-Garcia is correct that the district court improperly
admitted the challenged evidence. However, because that er-
ror was harmless in light of the evidence of Morales-Garcia's
guilt, and the prosecutor's rebuttal did not implicate Morales-
Garcia's Fifth Amendment rights, we affirm.

## I.  Background

### *Investigation*

The charges in this case stemmed from a U.S. Drug En-
forcement Administration investigation into cocaine traffick-
ing in January 2018. The investigation began when Task Force
Officer Rodolfo Avalos, acting in an undercover capacity,
posed as a person interested in purchasing significant quanti-
ties of cocaine. Avalos was eventually connected to Miguel
Angel Morales-Garcia, and the two began negotiating a po-
tential large-quantity cocaine deal. Recorded telephone con-
versations captured discussions between the two about kilo-
gram quantities of cocaine, pricing structures, delivery logis-
tics, transportation methods, and future transactions.

On January 11, 2018, Morales-Garcia met Officer Avalos at
a restaurant in Chicago. During that meeting, which was rec-
orded by law enforcement, the two discussed cocaine prices,
anticipated future dealings, and methods of avoiding law-en-
forcement detection. At one point during the meeting, Avalos
asked Morales-Garcia whether he had access to the "other
kind" or the "ugly kind," a slang term for heroin. In response,

Morales-Garcia indicated that he had recently sold the "ugly kind" to another person. The men then returned to their cocaine negotiations and Morales-Garcia gave Avalos a sample of the cocaine he was selling.

Morales-Garcia and Avalos continued to communicate via telephone and text message after the January 11 meeting. During those conversations, the two continued to negotiate quantity, pricing, and logistics. On January 27, the date the deal was to occur, law enforcement officers surveilled Morales-Garcia. They saw him retrieve a laundry bag from a home, place it into his vehicle, and drive toward the meeting location. Officers stopped the vehicle and recovered the bag, which contained multiple packages of cocaine. In statements made following his arrest, Morales-Garcia admitted involvement in the cocaine deal and acknowledged that he knew the bag contained cocaine. He also admitted to distributing other cocaine.

The government charged Morales-Garcia with conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine; distribution of cocaine; and possession with intent to distribute cocaine, in violation of 21 U.S.C §§ 841(a)(1), 846. More specifically, the indictment alleged that Morales-Garcia arranged the sale of approximately five kilograms or more of cocaine to Avalos.

*Pre-trial Motions*

Before trial, the government sought to admit as evidence the portion of the January 11 meeting discussing the "other kind" or "ugly kind," which the government contended were references to heroin. The government argued that the heroin-related discussion constituted direct evidence of the charged

conspiracy because it occurred during the same meeting as the cocaine negotiations and demonstrated Morales-Garcia's familiarity with drug distribution. The government also argued that the discussion was admissible under Federal Rule of Evidence 404(b) to prove Morales-Garcia's knowledge that he possessed cocaine and intended to distribute it. Morales-Garcia objected on grounds that the evidence involved an entirely separate drug and invited the jury to convict him based on generalized criminal disposition rather than proof of the charged offenses.

The district court accepted portions of both parties' arguments. The court expressly rejected the government's contention that the heroin discussion constituted direct evidence of the charged cocaine conspiracy, observing that "the charged conspiracy is about cocaine." And the court rejected Morales-Garcia's prejudice argument because the statement about heroin was "a relatively short reference within a broader conversation that's otherwise admissible anyway." Ultimately, the court admitted the evidence under Rule 404(b), concluding that the conversation was relevant to Morales-Garcia's knowledge and intent concerning controlled-substance trafficking.

*Trial*

At trial, the government presented testimony from Avalos, surveillance officers, forensic chemists, and other investigators. The government introduced recordings of meetings, text-message communications, and testimony regarding Morales-Garcia's post-arrest admissions. It also produced evidence that the substances given to Avalos as a sample and retrieved from Morales-Garcia's car tested positive for cocaine, and that the quantity of cocaine in the car exceeded five

kilograms. The government argued to the jury that this evidence established beyond a reasonable doubt that Morales-Garcia knowingly participated in a conspiracy to distribute approximately five kilograms of cocaine.

Over the defense's objection, the jury also heard evidence of the heroin-related discussion during the January 11 meeting. Investigators testified about the meaning of the coded language and why they believed the conversation concerned heroin. The district court instructed jurors that they could consider the evidence only for limited purposes relating to Morales-Garcia's knowledge and intent but not as proof of general criminal behavior.

For its part, the defense did not dispute that Morales-Garcia participated in the recorded conversations or planned to distribute cocaine. Rather, the defense's principal strategy focused on whether the government had proven all elements of the charged offenses, particularly the statutory drug quantity. Counsel challenged the reliability of the weight calculations, emphasizing testing procedures and arguing that the government had failed to establish the amount necessary for an enhanced sentence.

The government responded by presenting testimony concerning laboratory procedures, net weight calculations, and the consistency between the amount of cocaine Morales-Garcia and Avalos discussed and the amount the officers seized from Morales-Garcia's car. According to the government, the communications between Morales-Garcia and Avalos referenced five-kilogram quantities and the recovered cocaine corresponded closely with those negotiations.

The trial concluded with closing arguments. Consistent with its position during trial, defense counsel devoted substantial attention to the quantity of cocaine and argued that the government failed to satisfy its burden on that issue. The government maintained that the evidence overwhelmingly established every element of the offenses and the defense's quantity challenge was unsupported by the record. As part of its closing argument, the government reminded the jury of the January 11 meeting between Morales-Garcia and Avalos. The government argued that Morales-Garcia referenced heroin at this meeting to show he was a "proficient drug dealer" who would "deliver."

Relevant here, during rebuttal, the prosecutor stated: "Let's talk about what defense counsel did not talk to you about right now. She didn't talk to you about whether or not the defendant's guilty." Defense counsel objected immediately. The district court overruled the objection, explaining that it understood the prosecutor to be discussing the issues disputed at trial and allowed the prosecutor to continue. The prosecutor then explained the government's view that the evidence established guilt on each charged offense.

The jury convicted Morales-Garcia on all counts. He subsequently filed post-trial motions challenging both the admission of the heroin-related evidence and the prosecutor's remarks during closing argument. The district court denied those motions, reiterating its view that the heroin-related evidence was properly admitted to show knowledge and intent and the prosecutor's comments merely highlighted the narrow issues contested at trial. Morales-Garcia appeals those decisions.

## II.  Discussion

### A.  Evidentiary Challenge

We review a district court's decision to admit evidence, including other act evidence under Federal Rule of Evidence 404(b), for abuse of discretion. *United States v. Tinsley*, 62 F.4th 376, 383 (7th Cir. 2023). Because district courts enjoy broad discretion to control the admission of evidence, we will deem a court's evidentiary decision erroneous "only if no reasonable person would agree with the trial court's ruling." *Id*. Furthermore, even if we find that the district court committed an evidentiary error, we will reverse and order a new trial only if the error was not harmless. *United States v. Simon*, 727 F.3d 682, 696 (7th Cir. 2013).

Morales-Garcia argues that the district court erred when it permitted the government to present evidence of his heroin-related discussion at trial because the discussion's relevance depends on a propensity inference. We agree.

Rule 404(b) requires courts to exclude evidence of "other crimes, wrongs, or acts" submitted to prove a person's "propensity to behave in a certain way." *United States v. Dukes*, 147 F.4th 711, 716 (7th Cir. 2025) (quoting *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014) (en banc)). But that rule does not prohibit all uses of evidence of other acts; it precludes only evidence submitted to demonstrate that the defendant has a character or tendency that caused him to commit the charged offenses. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). As such, courts may admit bad acts evidence for non-propensity purposes, including (but not limited to) "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The

pertinent question is whether the evidence's "relevance to a permissible purpose can be established 'through a chain of reasoning that does not rely on the forbidden [propensity] inference.'" *Dukes*, 147 F.4th at 716 (quoting *Gomez*, 763 F.3d at 860).

The government contends that requirement is satisfied here. According to the government, the heroin-related evidence could have led the jury to a propensity-free inference regarding Morales-Garcia's familiarity with drug trafficking. From that, the government says, the jury could have concluded that Morales-Garcia knew he was negotiating a cocaine deal and intended to distribute cocaine. But the government's position ignores the reality that cocaine and heroin are different controlled substances, and Morales-Garcia was only charged with cocaine-related offenses. The only way the jury could infer anything about the charged offenses from the heroin-related discussion would be if the jury concluded that Morales-Garcia was a drug dealer generally.

In other words, the two acts (selling heroin and selling cocaine) can only be connected by a chain that requires an inference into Morales-Garcia's character—Morales-Garcia is the type of person who sells drugs—to make a conclusion about his conduct in this case—he intended to sell cocaine. The government's closing argument that Morales-Garcia was a "proficient drug dealer" who was trying to bolster his status to Avalos by referencing heroin reflects this very connection. Yet that is exactly the type of inference that Rule 404(b) prohibits. *Gomez*, 763 F.3d at 856 (stating that Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning" but "excludes the evidence if its relevance to 'another purpose' is

established *only* through the forbidden propensity inference."). For this reason, the district court erred by admitting the heroin-related evidence under Rule 404(b).

The court's decision also ran afoul of Rule 403. When other act evidence is offered to prove intent, "its probative value must not be substantially outweighed by the risk of unfair prejudice." *Gomez*, 763 F.3d at 859. The government sought to admit evidence of the heroin-related discussion to prove that Morales-Garcia intended to sell cocaine and knew that he was doing so. But Morales-Garcia never denied that he knew he was selling cocaine or intended to do so. In fact, in his post-arrest interview, Morales-Garcia admitted knowledge and intent. He also did not contest the issue at trial. *Id*. ("[T]he degree to which the non-propensity issue actually is contested may have a bearing on the probative value of the other-act evidence."). Instead, he challenged only the quantity of cocaine that he possessed and planned to distribute. Given these facts, the limited probative value of the heroin-related evidence outweighed the danger of undue prejudice, especially considering the breadth of other evidence available to the government to prove these uncontested issues.

Importantly, our identification of the court's evidentiary error does not end our inquiry. We must assess whether the error was harmless. *See* Fed. R. Crim. P. 52(a); *Gomez*, 763 F.3d at 863. Morales-Garcia contends that the error was not harmless because the case depended on witness credibility and we cannot assess how the jury weighed the inadmissible evidence in hindsight.

"'The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been

excluded.'" *Gomez*, 763 F.3d at 863 (quoting *United States v. Vargas*, 689 F.3d 867, 875 (7th Cir. 2012)). Here the evidence against Morales-Garcia "was quite compelling and would not have been less so had the other-act evidence been excluded." *Id.* Indeed, the government's case was so strong that, during oral argument, we questioned why the government fought to present the heroin-related discussion in the first place. At trial, the government presented transcripts of several conversations in which Morales-Garcia discussed the cocaine deal with Agent Avalos, Avalos's testimony, and testimony from the agents who tested the sample of cocaine and the five kilograms retrieved from Morales-Garcia's car. This evidence was enough to render the court's Rule 404(b) error harmless. *United States v. Parker*, 11 F.4th 593, 596 (7th Cir. 2021) ("an error is harmless where there is overwhelming evidence of guilt"). For that reason, we reject Morales-Garcia's argument that remand for a new trial is necessary.

## B. Closing Argument Challenge

Morales-Garcia also appeals the district court's denial of his request for a new trial based on an alleged violation of his Fifth Amendment right not to testify. We review "a district court's decision not to grant a new trial for abuse of discretion." *United States v. Mietus*, 237 F.3d 866, 870 (7th Cir. 2001). "If the court's decision rests on an error of law, however, then it is clear that an abuse of discretion has occurred, as it is always an abuse of discretion to base a decision on an incorrect view of the law." *Id.*

Morales-Garcia's Fifth Amendment challenge is based on the prosecutor's closing argument. During its rebuttal, the prosecutor told the jury that defense counsel "didn't talk to you about whether or not the defendant's guilty." With that

statement, Morales-Garcia argues, that the government violated his Fifth Amendment right against self-incrimination by commenting on his failure to testify and suggesting to the jury that the defense had an obligation to prove his innocence. We disagree.

"The Fifth Amendment prohibits prosecutors from commenting on a defendant's decision not to testify." *United States v. Gustafson*, 130 F.4th 608, 617–18 (7th Cir. 2025) (citing *Griffin v. California*, 380 U.S. 609, 615 (1965)). "Accordingly, a prosecutor may not make direct or indirect comments 'that lead the jury to draw a negative inference from a defendant's decision.'" *Id.* (quoting *United States v. Tucker*, 714 F.3d 1006, 1014 (7th Cir. 2013)). To decide whether comments during the government's rebuttal argument are so prejudicial as to warrant a new trial, we view the comments in the context of the entire record. *United States v. McKenzie*, 922 F.2d 1323, 1326 (7th Cir. 1991) (citing *United States v. Brantley*, 786 F.2d 1322, 1330 (7th Cir. 1986)). Our primary task is to determine whether the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process,'" and whether "they affected the jury's ability to adjudge the evidence fairly and objectively." *Id.* (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1985); *United States v. Young*, 470 U.S. 1, 12 (1985)).

A prosecutor's comment does not need to explicitly reference a defendant's failure to testify or include certain words to be prejudicial. *Id.* Rather, if what the prosecutor said could reasonably be taken as a comment on the defendant's right not to testify and thus used to support a witness's credibility, the argument is improper. *Id.* As such, "if the defendant is the only witness who can rebut the prosecution's evidence, a

comment that 'there is no evidence in support of his claim of innocence' or 'no evidence favorable to defendant'" is improper. *Id.* By contrast, when other evidence links the defendant to the crime, a prosecutor's comment about the defense's failure to rebut evidence is unproblematic because the comment "would not 'naturally and necessarily' remind the jury that the defendant had not testified." *Id.* at 1327. The rule is that a prosecutor's indirect comment, like the statement Morales-Garcia challenges here, "will be deemed improper only if (1) the prosecutor manifestly intended to refer to the defendant's silence or (2) a jury would naturally and necessarily take the remark for a comment on the defendant's silence." *United States v. Eiland*, 161 F.4th 494, 502–03 (7th Cir. 2025).

"In evaluating whether a prosecutor's comments denied a defendant a fair trial, we look at them first in isolation to determine whether they stayed within proper bounds." *Mietus*, 237 F.3d at 870. "If not, the next step in the analysis depends on whether the impropriety violated one of the defendant's specific trial rights, such as the Fifth Amendment right against self-incrimination." *Id.*

Morales-Garcia's challenge fails at the first step because the prosecutor's comments were not improper. Although the government may not refer to its evidence as "uncontradicted" under our case law, it may respond to defense counsel's closing argument on rebuttal. *Eiland*, 161 F.4th at 502–03 (recognizing there is no Fifth Amendment violation where the prosecutor was "merely responding to the defense counsel's closing argument."). Here, defense counsel focused on a purported lack of evidence that Morales-Garcia possessed five grams of cocaine.

In context then, the prosecutor's rebuttal statement flagged that defense counsel "did not talk to [the jury] about" Morales-Garcia's guilt. And, immediately after making that statement, the prosecutor proceeded to discuss how the government's evidence proved each charge and how quantity (the defense's exclusive focus) was relevant to the case. On this record, the prosecutor's statement is best understood as a response to defense counsel's closing and a reminder to the jury of the issues in the case, not an improper comment on Morales-Garcia's silence.

Furthermore, even if we concluded that the prosecutor's statement was inappropriate, Morales-Garcia faces another obstacle in seeking a new trial. To succeed, Morales-Garcia must show that the prosecutor's "remarks in the context of the whole record denied [him] the right to a fair trial*." United States v. Kelerchian*, 937 F.3d 895, 916 (7th Cir. 2019) (citation modified). At this step, we must consider "(1) the nature and seriousness of the misconduct; (2) the extent to which the defense invited the comments; (3) the extent to which jury instructions ameliorated the prejudice; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction." *Gustafson*, 130 F.4th at 618 (quoting *Kelerchian*, 937 F.3d at 916–17 (internal quotations omitted)). And although we consider all five factors, we place "considerable emphasis on" the third and fifth factors. *Id.* (citing *United States v. Common*, 818 F.3d 323, 333 (7th Cir. 2016)).

The third factor weighs against a finding of prejudice because the district court repeatedly emphasized to the jury that the government had the burden to prove Morales-Garcia guilty beyond a reasonable doubt. Those jury instructions remedied any prejudice that may have resulted from the

prosecutor's rebuttal statement in this case. And, for the reasons stated above with respect to the harmlessness of the Rule 404(b)(2) error, the overwhelming evidence of Morales-Garcia's guilt too weighs against a finding of prejudice. The district court therefore did not abuse its discretion when it denied Morales-Garcia's request for a new trial.

## III.  Conclusion

The district court erred by admitting the heroin-related conversation under Rule 404(b). The error, however, was harmless given the overwhelming evidence of Morales-Garcia's guilt, including his admissions. Likewise, the prosecutor's remarks at closing argument do not amount to reversible misconduct. Nor, given the strength of the government's case, do they merit a new trial. The district court's judgment is AFFIRMED.